Good morning. For the record, Melody Walcott, Federal Defender Office, on behalf of Rodriguez-Lara. Can I ask you to speak up just a little bit? Yes. Act like you're in front of a class of junior high students. You'll do just fine. Before I begin, I do have a correction to my argument in reading it over and reading it over. I noted that, for some reason, I had stated in my brief that Mr. Rodriguez-Lara asserted his request for a demographic expert for the first time in August. Actually, he asserted it by motion in June, and I think that's reflected in the Excerpts of Record at Volume 1, whether those were the first series of motions that he filed, requesting an opportunity to inspect the records, requesting an opportunity to have a demographic expert. And he made the request prior to trial and then during trial. That's correct. Actually, the last discussion was immediately prior to jury selection. I'm sorry. The issue that I'm most interested in, counsel, is the comparative groups. Should we be looking at the eligible jurors or should we be looking at the community as a whole? I think we have to look at the eligible jurors, but we also have to look at that was part of the discussion. That was part of the struggle for Mr. Rodriguez-Lara in gathering the materials and figuring out where he was supposed to go. I noted, as I looked again through the cases, that both things were done, but at some point it's clear to me that you have to look at eligible jurors. Why? Well, I think there was some truth in what Judge Wanger was saying, that in our district, there are or may be, because we don't have the numbers, we don't know how many there are, there may be, surely there are, people who are Spanish-speaking, we know that, who do not speak English, people who, there are several prisons in the area. And I think I would be remiss to walk away from that part of the analysis. I think you do have to look at that at some point, but you have to start at the number of Hispanics in the population versus, and look at the numbers that may be eligible for, to sit as jurors. That doesn't quite give me the structure for the comparison. It seems to me if one had a small group of eligible jurors, because let's say that they've been deprived of educational opportunities, and yet there was a very large Hispanic population, are you saying to me that they would only get the percentage that related to those who were fully eligible? It seems to me you're not getting a representative jury for this individual. Well, I wouldn't say that you would draw the line at the educational level, but it's clear to me, obviously we would have to start with an individual's ability to communicate and to understand what's going on in the courtroom. Well, I understand that for actually serving on the jury, but for those to make up the jury pool, you would say they would have to be in a percentage of those juror-eligible or community-wide? You have to start with the community. So my, the way I envision it, Your Honor, is that you have to start with the community. You have to start with the community-wide and then work down from there. But, okay. I guess I don't understand what the working down is. You would start with the community-wide. What I, maybe I'm misunderstanding the court's question, but what I'm thinking is that when the jury is going to be, there's going to be some review that takes place within the court system to determine who may be eligible and who may not. And that's what I'm looking at as at least one of the steps that will have to take place. So perhaps I'm misunderstanding what the court's implication is from the question. Do you compare the jury wheel to the population at large, or do you compare the jury wheel to the voter-eligible population? What's the equation? In your view, what's the proper equation? I think you compare the jury wheel to the population at large. And what's your best case on that point? In other words, would we have to make new law to do that, or is there existing law that would help us decide that? I believe that that was done in Durham versus Missouri, Your Honor. So I would cite that as my premise for that. Is Durham a Ninth Circuit case? No, it is the Supreme Court case, Your Honor, for the exclusion of women, and it was a Sixth Amendment violation. And in that case, they compared the wheel to the general population? They compared the, yes, the total eligible jurors. The concern, though, in Durham, I suppose, is really that there were women, the women who were eligible, there was an initial cutoff, because if the women said they had a child under a certain age, they were immediately excluded from the group of eligible jurors. I had thought Durham was a systemic, systematic, whatever the proper word is, exclusion case. That's right. It is listed, it was initially listed as a Sixth Amendment violation, but I think it was really analyzed both ways. That's also an equal protection argument, Your Honor. Yes, but doesn't the case stand for the proposition of the proper test for determining whether there's been a systematic exclusion of certain segments of the population from the jury pool? I'm sorry, could the Court repeat that question? Doesn't Durham stand for the proposition of what the proper standard is to determine when there has been a systematic exclusion from the jury pool? That is where the analysis ended, yes, Your Honor. Okay. You're down to about two minutes. Did you want to save any for rebuttal? I did want to save two minutes for rebuttal, Your Honor. Thank you for your argument. Thank you. We'll hear from the United States at this time. Good morning. Good morning, Your Honors. David Gappa for the United States, the affilee in this case. It is our position that this Court should affirm the conviction in this case and that the district court did not abuse its discretion to deny the defendant's request for appointment of a demographic expert. If this defendant, Rodriguez-Lara, had retained counsel and could afford the services of a demographic expert and attached an affidavit to a proper motion, would the district court have been on solid grounds in excluding that information? I don't believe the district court would have excluded that information, Your Honor. We're not talking about the conclusion that the judge might ultimately come to. We're talking about what the judge considers. Correct. Isn't that the question in this case? Well, the way the issue is framed, Your Honor, is whether it was an abuse of discretion by the district court's discretion to deny the defendant's request. I understand what the standard is. It's abuse of discretion. It's a fairly high standard in terms of overturning it. But isn't the question in this case whether the defendant should have had an expert that he requested to help support his motion related to the composition of the jury pool? And isn't one of the factors in determining that whether this would have been available to a paying client? Well, I think the question in the standard is whether a reasonable attorney would retain the expert at that client's expense if the client could afford the services of that expert. So I think the question is whether a reasonable attorney looking at the record and what the potential record is would retain the services of a paid expert. And the Court, in looking at the record in this case and also in looking at its experience, decided that no reasonable attorney would draw that conclusion and no reasonable attorney would pay for an expert. Didn't Rodriguez-Lara attach to one or more of his motions or make reference to experts that had been retained in other cases in the Eastern District in the Fresno Division? Yes. He had somehow managed to obtain some records that may have been from the most recent case. They were public records, counsel. You're not suggesting that he got them improperly, are you? No, not at all. Okay. Well, these were cases where individuals paying clients who could afford to pay for experts, correct, and submitted information about the demographic makeup of the jury pool in the Fresno Division, right? I'm not sure, Your Honor, where he obtained the documents from, but it does ---- It's not important for the purpose of my question, counsel, where he obtained them. Okay. He did attach or did make reference to experts that had been hired by paying clients, right? I don't know whether the expert that had prepared an affidavit, which turned up in this case, had been retained or not, Your Honor. Well, do you have some information to suggest they were volunteers? That record was not developed. Okay. I ask you to assume, then, for the purpose of the question I'm going to ask you for the third time, is assume that they were paying clients and that the experts were paid and retained and provided the information that Rodriguez-Lara referred to. Those expert affidavits were considered by the court, weren't they? They were. Irrespective of what decision the judge, the district court, ultimately reached in those cases, they were considered. Correct. And isn't that our inquiry here? Whether I would concede that the court reviewed everything in its record, and I'm not sure I understand the court's question. There were past instances in which the Eastern District has considered the declarations, affidavits, or testimony of paid experts on this issue. That's correct. Whether the jury makeup, the jury selection process in the Eastern District, and specifically in the Fresno Division, satisfies constitutional muster, right? Yes. So I guess it's like the old saying, sauce for the goose, sauce for the gander. If it was okay in a privately retained case, why isn't it okay in the case of someone who can't afford counsel and is asking the court to provide funds, court funds, for the retention of an expert? Your Honor, the district court looked at the ultimate result of the case, which apparently that prior affidavit had been used in, and that went to the Ninth Circuit. And the Ninth Circuit looked at the entire process and found that there was no defect in the jury selection procedures in place in the Eastern District and specifically in the Fresno Division. And the Court, as noted in its decision, indicated that the jury commissioner had begun to obtain voluntarily from jurors in cases statistical data about what they reported as their ethnic background. And they were finding that for the approximate one year prior to Mr. Rodriguez's coming into court, that about 18 percent of jurors were reporting their ethnic background as Hispanic. And that very closely correlates to the same percentage of jury-eligible persons within the district and the division which are Hispanic. So there's really no apparent disparity there. Counsel, that's why I started out with the lead question as to whether you look to jury eligible or you look to community-wide. Now, in the Duren case, they said specifically that in looking for the fair cross-section requirement, it involves a comparison of the makeup of jury veneers or other sources from which jurors are drawn with the makeup of the community in italics, not the voter registration list. To answer the question that you posed to Ms. Walcott, I would suggest that the appropriate percentage to look at is not the percentage of Hispanics or whichever minority as a percentage of the population as a whole, but rather jury-eligible persons, because I think that's counter to this case and to several other cases. Now, what authority do you have for looking only at jury-eligible? Your Honor, I believe that was the standard that this Court had used in United States v. Sotoswad at 696 F. Second 645. I believe that the reasoning is that there are obviously a percentage of people who are not on the rolls for potential jury service given that they're not registered to vote, and for that reason, they may not be registered to vote and they may not be a United States citizen. They also have to be conversant in English. They can't be in prison or on parole. Well, I understand who can actually serve on the jury, but when we're looking at whether an individual is tried by a jury which is made up of the community and that has an adequate representation of his own race on the jury, I'm not sure that that's the right, right way to go. Well, Your Honor, if we use the percentage as a whole, then we would have to look at persons who have criminal records, persons who could not communicate. We wouldn't let them. We wouldn't let them serve on the jury, but they are part of the community. They're part of the larger community, Your Honor, but not part of the more narrow community of persons eligible to serve on the jury. And I think that there have been determinations made that that's the best source of jurors in the Jury Selection and Service Act, which Congress enacted and which has been upheld previously, and there's a recognition that I believe that, you know, for better or worse, those are considered better jurors, that they've demonstrated a civic responsibility in registering to vote. I don't disagree with that at all as to who may actually serve on the jury, but it is a question of whether the defendant's peers are in the jury pool. Well, Your Honor, if we truly used his peers, then we would have to look at people with his background, such as a criminal record, and he's not a United States citizen. So I don't think you could ever have truly a jury of his peers because they're not qualified to be on the jury. So to a certain extent, the percentage as a whole is not that relevant. And I believe the better focus is on looking at juriological persons. I see my time is up. Okay. Thank you for your argument, counsel. Rebuttal argument? Just very briefly, Your Honors. I wanted to make some mention regarding the materials that Mr. Rodriguez-Lore actually received. When he finally got the JS-12 forms, which, if my memory is serving me correctly at this point, was not until very close to trial time, if not the day before trial time, he still didn't have all the materials that he needed, because what he received and the court discussed it in the course of listening to Mr. Rodriguez-Lore's presentation regarding the percentages. What he received were the JS-12s for three counties. Our division is 11 counties. The total district is 33 counties. So he still didn't have the materials that he needed to even attempt to make the prima facie showing on his own. And he obviously didn't have the expert either, and the argument throughout, I think from June to September, every time we were in the court, kind of became in my mind a circular kind of an argument. You can't have the expert because you don't have the materials, and you can't make the argument because you don't have the materials and you don't have the expert. So the argument kind of took on a circular nature. But I think the focus was that he didn't have, he still didn't have the materials that he needed, even when he finally got them. And it's our position that he should have been able to receive all the materials, he should have been able to have a demographic expert who could have properly analyzed the materials, let him know you need this, you need that, you need these additional things. Thank you. Okay, thank you, counsel. Thank both counsel for their arguments. The case just argued will be submitted for decision.
judges: Lay, B. Fletcher, Hawkins